IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RUSSELL M. SHOSTED,<br><br>Plaintiff,<br><br>v.<br><br>LOUIS DeJOY, Postmaster General of the United States Postal Service,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:22-cv-00274-JNP-DAO<br><br>District Judge Jill N. Parrish |

Plaintiff Russell Shosted sued Postmaster General Louis DeJoy in his official capacity as the Postmaster General of the United States Postal Service (USPS). Shosted, a USPS employee, alleged that the USPS discriminated against him based on his age, gender, and disability. He also claimed that the USPS retaliated against him for opposing discrimination. The USPS filed a motion seeking summary judgment in its favor. ECF No. 31. The motion is GRANTED.

## BACKGROUND

Shosted is a mail carrier for the USPS. He worked at the Sugarhouse station. Karen Higgs was the manager of this location. Shosted contends that he was subjected to discrimination based on his age, gender, and disability status due to back pain. He also claims he was the victim of retaliation for engaging in protected activities. Shosted was not fired, demoted, denied benefits, or involuntarily transferred. Indeed, he is still employed by the USPS. But he contends that the USPS discriminated and retaliated against him through eight separate incidents described below. In describing and considering these incidents, the court resolves all disputed facts in Shosted's favor.

1)      Union Overtime Tracking Duties

The union steward for the Sugarhouse station assigned Shosted the duty of tracking overtime to make sure that his fellow letter carriers received proper compensation. Higgs told the union steward that she did not want Shosted to perform this duty, but the steward refused to comply with her request to remove him. The union subsequently appointed a new steward for the Sugarhouse station. Sometime around July 2017, the new steward assumed the duty of tracking overtime himself. When Shosted asked the new steward if Higgs had asked the steward to take away his overtime tracking duties, the steward replied: "[C]ome on man, you know." ECF No. 35-1 at 189.

2)      Personality Conflicts

Higgs and Shosted did not get along. When Shosted disagreed with Higgs, she told him that he was being insubordinate. If Shosted interjected while Higgs was speaking, she would say things like "I'm not finished" or "I'm talking." ECF No. 35-1 at 196. She would then walk away without hearing his objections. Higgs also "reduce[d] [Shosted's] status" by giving him instructions in front of other employees. *Id.* Shosted believed that Higgs had "a need to show her dominance over [him], her [sic] as a female and [he] as a male." ECF No. 35-1 at 191.

3)      Instruction Not to Approach Alone

On July 5, 2017, Shosted entered Higgs's office to ask her if she knew where he could find lined paper. She said no. Higgs later told Shosted's immediate supervisor, Matt Korogi, that Shosted could no longer come into her office without a witness because Shosted had yelled and shaken his fist and fingers at her in her office in the past. About two hours after Shosted had entered Higgs's office, Korogi asked Shosted to sign a memorandum stating the following: "Russ you are not allowed to approach Sugarhouse Manager Karen Higgs in any way without a witness present.

Consider this an instruction from your Supervisor." ECF No. 31-13 at 2. Shosted refused to sign the document. Korogi wrote "refused to sign" on the signature line and gave the document to Shosted.

A few minutes later, Korogi asked Shosted to return the document. Because Shosted believed the memorandum to be evidence of his poor treatment by Higgs, he refused to give Korogi the memorandum. Instead, Shosted gave Korogi a photocopy. Korogi wrote "Rescinded" on the copy and returned it to Shosted.

    4)    Restroom Use

Other letter carriers complained to Higgs that Shosted would go straight to the restroom for 15 to 20 minutes as soon as he clocked in to work. On December 19, 2017, in front of two other letter carriers, Higgs instructed Shosted that he needed to use the restroom before he clocked in for the day. Shosted found Higgs to be very condescending and demeaning during this conversation.

    5)    Delivery Route Time Estimate

On January 12, 2018, Shosted told his supervisor that he estimated he would finish his delivery route by 5:00 p.m. but that it was possible that he could finish by 4:30 p.m. The supervisor believed that this estimate was unreasonably high because the other letter carriers estimated that they would finish between 3:00 p.m. and 3:30 p.m. The supervisor asked Higgs to speak with Shosted about his estimate because he believed that Shosted could finish his route in less time. Higgs brought Shosted into her office in the presence of another postal employee. Higgs told Shosted that she believed that he had padded his estimate and that there was no reason that he would need one-and-a-half hours of overtime to finish his route.

6)     Warning Letter

On January 4, 2018, Shosted stayed at work after he had clocked out in order to work on union grievances that were due that day. Around 7:00 p.m., he went to the parking lot to retrieve his car and discovered that the gate was locked. Shosted climbed a fence, walked on an aluminum cover over a set of stairs, and then climbed down an eight-foot fence into the parking lot to access his car. On January 18, 2018, Korogi issued a letter of warning to Shosted for being unsafe while on USPS property. The letter warned Shosted that future deficiencies would result in disciplinary action.

7)     Transfer Denial

Shosted applied for a transfer to the West Jordan station. On February 5. 2018, the West Jordan station manager denied the transfer.

8)     Higgs at the West Valley Station

In March 2018, Shosted's request to be transferred to the West Valley station was granted. In August 2018, Higgs visited the West Valley station for a training exercise. In October 2018, Higgs went to the West Valley station again to personally inform an applicant that she had not selected him for a supervisor position. Higgs did not speak to Shosted on either occasion. During the October 2018 visit, a union steward approached Higgs and told her that Shosted had seen her and was upset by her presence. Higgs stated that she was not at the West Valley station to see Shosted and that she was there on other business. When the steward suggested that Higgs should call rather than visit the West Valley station, Higgs responded that she would go to that location if she had a legitimate business reason to do so unless otherwise instructed.

*  *  *

Shosted sued the USPS, asserting that these incidents constituted discrimination against him based on his age, gender, and disability. He also claimed that the USPS had retaliated against him for engaging in protected conduct. The USPS moved for summary judgment on all of these claims.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment on a claim is required if the party that bears the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

If an employee relies on circumstantial evidence to prove an employment discrimination or retaliation claim, courts apply the *McDonnell Douglas* burden-shifting framework when evaluating a motion for summary judgment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973) (applying burden shifting framework to a discrimination claim); *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004) (holding that *McDonnell Douglas* framework applies to retaliation claims). This three-step analytical framework first demands that the employee carry his or her initial burden of establishing a prima facie case of discrimination or retaliation. *McDonnell Douglas*, 411 U.S. at 802. If the employee satisfies this step, the burden then shifts to the employer to "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action

taken by the employer. *Id.* Finally, the burden shifts back to the employee to show that that the employer's stated reason for the adverse employment action was pretextual. *Id.* at 804.

## ANALYSIS

### I. CONCEDED CLAIMS

The USPS argues that it is entitled to summary judgment on Shosted's age discrimination claim because he was under the age of 40 when he filed a formal charge of discrimination. *See* 29 U.S.C. § 633a(a) ("All personnel actions affecting employees . . . who are at least 40 years of age . . . in the United States Postal Service . . . shall be made free from any discrimination based on age."). Shosted concedes this claim and does not oppose summary judgment.

Shosted also concedes all claims related to the West Jordan station manager's decision to deny his transfer request if Higgs had nothing to do with the denial. Because Shosted does not point to any evidence that Higgs influenced the denial, this amounts to a concession that summary judgment is proper on the discrimination and retaliation claims based on his transfer request. Moreover, Shosted concedes that here is no basis for his discrimination and retaliations claims based on Higgs's visits to the West Valley station.

Accordingly, the court grants summary judgment in favor of the USPS on the age discrimination claim and on his other claims to the extent they are based on the denied transfer and Higgs's visits to the West Valley station.

### II. GENDER AND DISABILITY DISCRIMINATION CLAIMS

The USPS argues that the court should grant summary judgment in its favor on the gender and disability discrimination claims because they fail under the first step of the *McDonnell Douglas* test. It contends that Shosted has failed to carry his burden of establishing a prima facie

case of discrimination because he has not cited evidence that he suffered an adverse employment action. The court agrees.

Shosted alleges that the USPS discriminated against him based on his gender in violation of Title VII of the Civil Rights Act, which makes it unlawful for an employer to fire or otherwise discriminate against an employee "with respect to his compensation, terms, conditions, or privileges of employment, because of" the employee's sex. 42 U.S.C. § 2000e-2(a)(1). A prima facie case for gender discrimination requires the employee to show that (1) he or she "is a member of a protected class," (2) he or she "suffered an adverse employment action," and (3) "the challenged action occurred under circumstances giving rise to an inference of discrimination." *Bennett v. Windstream Communs., Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015).

Shosted also asserts a claim for disability discrimination under the Rehabilitation Act, which prohibits the USPS from discriminating against an otherwise qualified individual with a disability. 29 U.S.C. § 794(a). In the context of an employment discrimination claim, the standard for determining whether the Rehabilitation Act has been violated is the same standard applied under the Americans with Disabilities Act (ADA). 29 U.S.C. § 794(d). The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Similar to a Title VII discrimination claim, a federal employee asserting a disability discrimination claim must prove that he "suffered an adverse employment action because of his disability." *Brown v. Austin*, 13 F.4th 1079, 1092 (10th Cir. 2021).

Thus, in order to carry his initial burden of establishing a prima facie case for gender and disability discrimination, Shosted must show that he suffered an adverse employment action—i.e.,

7

termination, demotion, reduction in salary, or other employment action negatively affecting the "terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1); *accord* 42 U.S.C. § 12112(a).

The Tenth Circuit liberally defines the term "adverse employment action" and "takes 'a case-by-case approach, examining the unique factors relevant to the situation at hand.'" *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1040 (10th Cir. 2011) (citation omitted). Adverse employment actions include hiring, firing, failing to promote, reassignment to a different position, and reductions to benefits or pay. *Id.* However:

> the term "adverse employment action" is not necessarily "limited to such acts." [A]lthough the term is not confined to, for example, "monetary losses in the form of wages or benefits, 'a mere inconvenience or an alteration of job responsibilities'" does not constitute an "adverse employment action." Accordingly, a plaintiff must show that the alleged adverse action caused more than "*de minimis* harm" to or a "*de minimis* impact" upon an employee's job opportunities or status.

*Id*. (citations omitted) (cleaned up).

Applying this standard, the Tenth Circuit has held that requiring trainees to sign a consent form to receive truck driving training from an HIV positive trainer did not constitute an adverse employment action where the trainer failed to show that the form limited the trainer's job opportunities or status. *Id.* at 1040–41. Although the Tenth Circuit acknowledged that some may disapprove the employer's consent form policy, it affirmed summary judgment in favor of the employer, noting that "not every perceived indignity will rise to the level of an adverse employment action." *Id.* at 1041 (citation omitted); *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (observing that Title VII does not set forth "a general civility code for the American workplace").

Moreover, even heated conflicts with a supervisor do not constitute an adverse employment action. In *Brown v. Austin*, 13 F.4th 1079, 1084 (10th Cir. 2021), an employee had a strained relationship with his supervisor. In one incident, the employee and the supervisor argued after the supervisor requested more work from the employee on a project. *Id.* According to the employee, the supervisor unfairly criticized his work and yelled at him. *Id.* The employer placed the employee on paid administrative leave and issued a reprimand letter because of the argument. *Id.* The employee found the incident to be "very embarrassing and publicly humiliating." *Id.* at 1092. In another incident, the employee sent an email to his supervisor expressing frustration that the supervisor had denied a transfer request to another supervisor, attributing the decision to bias and prejudice. *Id.* at 1084. The supervisor responded by criticizing the employee's poor attitude and stated that the employee could bring a discrimination complaint if the employee believed that his rights had been violated. *Id.* The employee sued his federal employer, asserting a claim for disability discrimination under the Rehabilitation Act. *Id.* The Tenth Circuit affirmed summary judgment in favor of the employer, holding that the employee had not suffered an adverse employment action because his argument with his supervisor did not cause reputational damage that would affect his employment status. *Id.* at 1092.

In this case, Shosted similarly has not shown that he was subjected to an adverse employment action. Shosted's assertion that Higgs pressured his union leader to remove his duty of tracking overtime is not an adverse employment action because this task was not a term, condition, or privilege of his employment with the USPS. It was a separate duty assigned by his union in conjunction with his union membership. Moreover, Shosted has not explained how the removal of the duty was adverse.

Shosted's assertions that Higgs reprimanded him in a manner that he found to be demeaning or unfair on a number of occasions—including by issuing then retracting an instruction not to approach her alone, telling Shosted to use the bathroom before clocking in, and criticizing a delivery time estimate—likewise do not rise to the level of an adverse employment action. Shosted was not suspended or formally sanctioned. Nor does he point to any changes in the conditions of his employment. Instead, Shosted argues that the manner in which Higgs treated him constituted an adverse employment action because these reprimands damaged his mental health.[1] Although a conflict with a supervisor is undoubtably stressful, it does not constitute an adverse employment action. Even heated arguments with a supervisor and being subjected to yelling and unfair criticism do not rise to this level. *Brown*, 13 F.4th at 1084, 1091–92; *see also Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 533 (10th Cir. 1998) ("'[U]nsubstantiated oral reprimands' and 'unnecessary derogatory comments' such as those alleged here are not included within the definition of adverse action absent evidence that they had some impact on the employee's employment status."). An employee's feelings of embarrassment or public humiliation are not sufficient unless the employee can also prove reputational damage to the degree that would change his or her employment status. *Brown*, 13 F.4th at 1092 (citing *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996), for the proposition that an employer's false accusations that lead to a criminal trial "can have an adverse impact on future employment opportunities and therefore can be an adverse employment action"). There is no evidence here of reputational damage that could

---

[1] Shosted does not assert a hostile work environment cause of action in this action, nor does he assert that he can satisfy the legal standard for such a claim.

affect Shosted's future employment. Accordingly, Shosted has not stated a claim that Higgs's alleged unfair management and criticism amounted to adverse employment actions.

Finally, Shosted claims that the warning letter for climbing the fence was an adverse employment action. "A written warning *may* be an adverse employment action only if it" affects the plaintiff's employment status. *Haynes v. Level 3 Communs.*, 456 F.3d 1215, 1224 (10th Cir. 2006). For example, evidence that an employee received twenty warning letters in a two-year period supported a jury finding of an adverse employment action where the "record indicate[d] that the more warnings an employee received, the more likely he or she was to be terminated for a further infraction." *Roberts v. Roadway Express*, 149 F.3d 1098, 1104 (10th Cir. 1998). But the Tenth Circuit has also held that, as a matter of law, a warning letter was not an adverse employment action where the evidence did not show the letter had an "immediate effect" on the plaintiff's employment status. *Haynes*, 456 F.3d at 1224–25; *accord Medina v. Income Support Div.*, 413 F.3d 1131, 1137 (10th Cir. 2005) (holding that a warning letter was not an adverse employment action because it did not "adversely affect the terms or conditions" of the plaintiff's employment). Shosted has not cited evidence that the warning letter in this case was ever placed in his employment file or that the letter affected his employment status. Thus, he has not carried his burden of showing that the letter constituted an adverse employment action.

Because Shosted has not shown that any of the events that he complains of are adverse employment actions, his claims for gender and disability discrimination fail under step one of the *McDonnell Douglas* framework.

### III. RETALIATION CLAIM

To state a claim for retaliation, an employee need not prove that he or she suffered an adverse employment action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).

11

Instead, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'" *Id*. at 68 (citation omitted). The action must be *materially* adverse because "it is important to separate significant from trivial harms." *Id*. "[P]etty slights or minor annoyances," including "'personality conflicts at work that generate antipathy' and '"snubbing" by supervisors and co-workers,'" do not amount to materially adverse actions. *Id*. (quoting 1 B. LINDEMANN & P. GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 669 (3d ed.1996)).

The USPS argues that Shosted has not produced evidence supporting a prima facie case for retaliation because the actions challenged by Shosted would not be materially adverse to a reasonable employee. The court agrees.

For many of the same reasons stated above, a reasonable employee would not find the removal of Shosted's union overtime tracking duties to be materially adverse. Because Shosted did not cite any evidence that the removal of this extra union duty harmed or disadvantaged him in any way, he has not satisfied one of the requirements of a prima facie case for retaliation.

Shosted also failed to meet his burden of showing that his personality conflict with Higgs and the incidents where she criticized his work performance constituted materially adverse actions. As discussed above, the employee in *Brown v. Austin*, 13 F.4th 1079, 1084 (10th Cir. 2021) proffered evidence that his supervisor unfairly criticized his work and yelled at him. In that case, the employee was placed on paid administrative leave and received a reprimand letter due to his argument with his supervisor. *Id*. In addition to his disability discrimination claim, the employee asserted a retaliation claim based on his dispute with his supervisor. *Id*. at 1091. The Tenth Circuit affirmed summary judgment in favor of the employer on the retaliation claim, holding that the

employee's argument with his supervisor and subsequent disciplinary measures were not materially adverse actions because the employee did not produce evidence that he had suffered reputational damage that would affect future employment opportunities. *Id*. at 1091–92.

Like the employee in *Brown*, Shosted has not produced evidence that Higgs' abrasive management style and unfair criticisms caused reputational damage affecting his employment opportunities. Indeed, Higgs's treatment of Shosted was less hostile than the treatment that the *Brown* court found not to be materially adverse. Shosted has not cited evidence that Higgs yelled at him or that he was formally reprimanded or suspended due to his conflicts with Higgs. Thus, Shosted has not shown that Higgs's criticisms amount to materially adverse actions that would support a retaliation claim.

A reasonable employee also would not find the warning letter for climbing the fence to be materially adverse. Shosted did not produce evidence that the letter was placed in his employment file or that it would negatively affect him in the future.

In sum, Shosted has not shown that a reasonable employee would find the events that he complains of to be materially adverse actions. For the above-stated reasons, these actions would not deter a reasonable employee from making or supporting a claim of discrimination. Indeed, the actions of Higgs and Korogi did not dissuade Shosted from filing an EEO charge with the USPS in April 2018. *See Somoza v. Univ. of Denver*, 513 F.3d 1206, 1214 (10th Cir. 2008) ("[T]he fact that an employee continues to be undeterred in his or her pursuit of a remedy . . . may shed light as to whether the actions are sufficiently material and adverse to be actionable.") (cited with approval in *Brown*, 13 F.4th at 1092). Thus, the USPS is entitled to summary judgment on the retaliation claim.

## CONCLUSION

The court grants summary judgment in favor of defendant USPS on all claims asserted by Shosted.

DATED March 27, 2025.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge